| iJONES, Judge,
concurs.
I concur with my colleague that the trial court did not err in ordering blood tests and denying the motion to terminate the parental rights of the putative father.
However, I am troubled by that portion of the opinion which suggests that Jr. has juridical capacity to be sued, without the necessity of involvement on the part of his parents because of the language in La.Ch.C. article 1005. The express words contained in article 1005 make it clear that the article applies to proceedings under Title X of the Children’s Code. Associated Catholic Charities attempts to terminate Jr.’s parental rights because of an alleged failure to comply with the provisions of La.Ch.C. Art. 1132, a provision contained in Title XI of the Children’s Code. I am not inclined to hold that 1005 is applicable to proceedings instituted under cases brought under Title XI. Minors (except in certain limited cases) are considered incapable of suing or being sued. Rather, the parents are considered the legal representatives of their minor children. The reason for this is clear. Minors, because of their tender age, are not considered capable of handling their own business affairs without the assistance of their parents. Although physically capable of fathering a child, most authorities agree that it is the rare fifteen year old who is actually capable of providing for a child. Most fifteen year old teenagers, like the fifteen year old in this case, have not yet completed their formal education and generally speaking have no skills which would enable them to provide for a child. Indeed, most are not capable of providing for themselves prior to reaching the age of eighteen. For this reason, |2I do not believe that the Article 1005 provisions providing for the imposition of juridical capacity upon minors for purposes of Title 10 should be broadened to encompass termination proceedings brought under Title 11 of the Children’s Code. .
Assuming arguendo that my colleague is correct in stating that Jr. is subject to proceedings under Title 11 by virtue of the provisions of article 1102 of Title XI, the constitutionality of the entire statutory scheme is seriously questioned. If Jr. has juridical capacity by virtue of reading article 1102 in conjunction with article 1005, Jr. ran the risk of having his rights terminated pursuant to the provisions of article 1132 and 1137 without the necessity of counseling or assistance from his parents or a public agency. The unfairness of this procedure is readily apparent to this writer and further emphasizes the need to strictly interpret the provisions of article 1005 to apply only to proceedings expressly provided for by the plain wording of the article, i.e. “proceedings under this Title [Title 10].”
I also seriously question the relevancy of the fact that La.Ch.C. art. 1113(E) allows a minor to effectuate a voluntary surrender to an agency without the consent of the parents or tutor of the minor to the issues raised in this ease.[14] The questions raised in this case highlight the need for the Legislature to take another look at the entire scheme providing’ *1360 for the termination of parental rights, with a view toward ensuring that the statutory scheme contains adequate safeguards to protect the rights of minor parents.
Finally, I view the 15 day notice requirement of La.Ch.C. art. 1132 as analogous to the 15 day period of La.C.C.P. art. 1001 specifying the delay for answering a civil lawsuit. As such, failure to respond within this time period |3merely subjects the alleged father to the risk of having his parental rights terminated. It does not provide for an automatic extinguishment of parental rights without the necessity of any further action by the Court. A motion to terminate parental rights must be filed and acted upon by the Court. If the alleged father makes an objection prior to the actual granting of a motion to terminate, the trial court is well within its discretion to deny or defer judgment on the motion to terminate.
Cases such as this inevitably involve the balancing of interests, with the overriding interest being the best interest of the child. In the instant case, the need for a speedy resolution to the issue of whether the alleged father’s rights should be terminated is readily apparent. The child allegedly bom to the surrendering minor mother and the alleged minor father has most likely already bonded with a prospective adoptive family and the psychological damage that may occur because of a disruption of that relationship is readily apparent. However, along with the need that children have to a speedy resolution on custody is the need that so often surfaces at a later time, i.e. the need for the child to have access to accurate genetic information.[15] A paternity test at this time provides the best means of obtaining accurate genetic information. Since the record before us suggests the possibility that Jr. and/or his family were not aware of the birth, it would have been impossible to request such a test, prior to notification from the curator.
It is far better to allow for such testing at this state of the proceedings than to have lingering unanswered questions when the child reaches majority. The possibility of such valuable information being lost forever certainly exists, and mandates allowing the test now. Issues of whether the minor and/or his parents failed to timely request the tests and/or who gets permanent custody of the child may be addressed by the Court after paternity has been established. Given the uncertainty surrounding the identity of the biological father, the trial court exercised sound discretion in ordering a blood test to determine paternity prior to making a decision on whether to terminate parental rights.
Accordingly, I respectfully concur.

. The potential equal protection issues raised by the distinction made between surrenders to private and public adoptions in that article are obvious. See Teanna West Neskora, Constitutional rights of putative fathers recognized in Louisiana’s new Children's Code, 52 La.L.Rev. 1009, 1043 (1992)

. The Legislature recognized the importance of having access to accurate genetic information when it enacted Acts 1991, No. 235 § 11 as amended adding Articles 1124-1127 to the Children's Code and providing for the execution of a Statement of Family History in all cases wherein a parent surrenders a child for adoption.